IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

        Plaintiff,           :        Case No. 3:03-cr-169
                                           also 3:04-cv-241

                                           District Judge Walter Herbert Rice
        -vs-                         Chief Magistrate Judge Michael R. Merz
                                   :

JOHNATHAN MOORE,

        Defendant.

---

**REPORT AND RECOMMENDATIONS**

---

       This case is before the Court on Petitioner's Motion to Vacate under 28 U.S.C. §2255 (Doc. No. 56). Petitioner's raises one claim for relief, to wit, that his trial attorney provided ineffective assistance of counsel when he failed to file a notice of appeal. The United States has responded to the Motion with an Affidavit from the trial attorney, Assistant Federal Public Defender W. Kelly Johnson. Mr. Moore has in turn filed his own Affidavit and seeks an evidentiary hearing.

**Procedural History**

       Mr. Moore was originally arrested October 29, 2003, on a Complaint charging him with the two offenses to which he eventually pleaded guilty (Doc. No. 1). The Speedy Trial Act time for indictment was extended to permit pre-indictment negotiation between the United States and Mr. Moore's counsel (Doc. Nos. 15, 16). On the last day of the indictment period, December 29, 2003, an Information was filed instead, reflecting that a plea agreement had been reached (Doc. No. 19).

The Plea Agreement (Doc. No. 24) recites the following pertinent matters:

1. Mr. Moore acknowledged he understood that the mandatory minimum penalty for Count 2 (the firearms count) is seven years consecutive to any time imposed for Count 1 (the bank robbery count). ¶ 1.

2. The United States promised not to charge Mr. Moore with the Dayton robberies of U.S. Bank on October 10, 2003, and Key Bank on October 28, 2003. In addition, the United States Attorney for the Western District of Tennessee agreed not to charge Mr. Moore with the Memphis robberies of the National Bank of Commerce on June 27, 2003, and the Amsouth Bank on August 1, 2003. However, Mr. Moore had to continue to acknowledge his responsibility for those crimes. ¶ 2.

3. There was no agreement about what Petitioner's sentence would be. ¶ 8.

Mr. Moore then appeared before Judge Rice on February 20, 2004, to enter his plea of guilty (Minutes, Doc. No. 23). As is Judge Rice's practice, Mr. Moore was sworn on oath during the plea colloquy (Transcript, Doc. No. 77 at 3). During the hearing, Mr. Moore's lawyer, Kelly Johnson, explained how he had calculated the probable Sentencing Guideline range for these offenses, considering the other crimes with which Mr. Moore could have been charged and as to which he acknowledged his involvement. *Id*. at 13-15. This resulted in a calculated Guideline range for Count 1 of 110-137 months with the seven year (84 month) sentence on Count 2 to be served consecutively. *Id*. at 15. Mr. Moore acknowledged that he had discussed that estimate with Mr. Johnson and understood that it was only an estimate, not binding on the Court. *Id*. at 17. Mr. Moore acknowledged under oath that Mr. Johnson had not told him anything different from what Judge Rice had told him. *Id*. at 21, 30, 40. Mr. Moore also acknowledged that all the conversation he had with the Judge about Guidelines did not apply to the firearms charge for which there was a seven-year mandatory minimum consecutive sentence. *Id*. at 24. Mr. Moore acknowledged that no one

had promised him anything other than what was in the plea agreement, which had just been read into the record. *Id*. at 49. After this thorough colloquy, Defendant pled guilty to both counts. *Id*. at 53.

Mr. Moore was then referred to the Probation Department which prepared a presentence investigation report ("PSI"). That report contains a lengthy calculation of the effect of Mr. Moore's admission, as required by the Plea Agreement, to involvement in four other bank robberies (PSI at ¶¶36-79). This calculation resulted in a combined adjusted offense level of 32 with three points in reductions based on what had been agreed to for a final offense level of 29. *Id*. at ¶¶ 80-84. The PSI then engages in a lengthy calculation of Mr. Moore's criminal history points, arriving at a criminal history category of IV. *Id*. at ¶¶ 85-90. Combined, these resulted in a sentencing range of 121 to 151 months. *Id*. at ¶115.

On June 25, 2004, Mr. Moore appeared before Judge Rice and was sentenced to 121 months on Count 1 and 84 months consecutive on Count 2 (Minutes, Doc. No. 36; Judgment, Doc. No. 42). Mr. Moore and his counsel each said they had no objections to the PSI. (Transcript, Doc. No. 53 at 2). Mr. Johnson requested that the Judge sentence at the low end of the Guideline range, 121 months. *Id*. at 3. Invited to give his own allocution, Mr. Moore said only that "I take full responsibility for the crime that I committed." *Id*. at 4. Judge Rice imposed sentence exactly as Mr. Johnson had requested at 121 months on the bank robbery. Then Judge Rice explained the right to appeal and asked Mr. Moore if he understood. *Id*. at 9. Mr. Moore responded "yes." *Id*. At the end of the proceeding, Judge Rice asked Mr. Moore if he had anything additional to say or ask and he answered "no, sir." *Id*. at 10. No appeal was taken.

**Positions of the Parties**

On July 11, 2005, about ten months after he was sentenced, Mr. Moore filed his instant Motion to Vacate under 28 U.S.C. §2255, pleading as follows:

> **Ground One:** Ineffective Assistance of Appellate Counsel.
>
> **Supporting Facts:** Trial counsel failed to file a Notice of Appeal and attack Petitioner's incorrect application of the United States Sentencing Guideline (Doc. No. 56 at 5.)

It would have been *per se* ineffective assistance of counsel for Mr. Johnson not to have filed a notice of appeal if Mr. Moore had requested one. Failure to file a notice of appeal on request is ineffective assistance without any showing of prejudice. *Ludwig v. United States,* 162 F. 3d 456 (6th Cir. 1998). However, Mr. Moore does not claim that he actually requested that a notice be filed. Instead, relying on *Roe v. Flores-Ortega,* 528 U.S. 470 (2000), he contends that Mr. Johnson did not adequately consult with him about filing an appeal and that a rational defendant would want to appeal in this particular case.

As to what he would have appealed, Mr. Moore states:

> Prior to sentencing counsel informed Petitioner that he would only be facing up to 57 months for Count 1 and 84 months for Count 2. Counsel informed Petitioner again that he would be facing 121-151 months on Count 1 and 84 months on Count 2 after the PSR was presented. Petitioner received a total of 205 months. Far exceeding the maximum sentence counsel informed Petitioner he would be receiving before he plead [sic] guilty and received a PSR.

(Memorandum of Points and Authorities attached to Motion at 5.) He admits that he was told that the maximum sentence for armed bank robbery was 25 years. *Id.* He claims he received two points for theft of property of a financial institution which he never admitted to in his plea agreement, a point for a loss of more than $10,000 but less than $50,000 which he never admitted to, points for

four bank robberies which he never admitted to or admitted the amount of money loss, and the multiple offense adjustment in PSI ¶¶ 71-79 which he never admitted to. *Id.* at 6. He claims that *Blakely v. Washington*, 542 U.S. ___, 124 S.Ct. 2531, 159 L. Ed. 2d 403 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 2355, 147 L.Ed.2d 435 (2000), should have been the basis of an appeal. *Id.* at 7. In an attached Affidavit he claims that his counsel told him he would be facing 46 to 57 months on Count 2 and

> 6. That during sentencing, the judge informed me of my rights to appeal my sentence and I stated that, "I understood."
>
> 7. That I was under the impression that I had invoked my rights to appeal, and that counsel would perfect my direct appeal for me.
>
> 8. That no time during sentencing or after sentencing have counsel consulted with me about appealing my sentencing enhancements.
>
> 9. That my desire was always to appeal my sentence and had counsel consulted with me, I would have informed him of my desire to appeal my sentencing enhancements.

Upon initial review under Rule 4 of the Rules Governing §2255 Motions, the Magistrate Judge recommended dismissal.[1] In objecting to that Report, Mr. Moore explained that when he said he understood his right to appeal, he thought he was actually exercising that right according to what he calls "implied consent." (Objections, Doc. No. 59 at 2.) He concluded that he did not receive the sentence he bargained for and should be allowed to attack "his enhancements" under *United States v. Booker*, 125 S. Ct. 738 (2004). He claims the Government agreed not to charge him with the other four bank robberies and seems to believe that the fact that they were included in the Guidelines calculation violates the Plea Agreement. *Id.* at 4.

---

[1] This Report and Recommendations was withdrawn to permit fuller development of the record.

In response to the Motion to Vacate, the United States obtained the Affidavit of W. Kelly Johnson who states that he met with Mr. Moore on June 21, 2004, at the Montgomery County Jail and that his notes show nothing about a request for appeal although they do show three items Mr. Moore did ask to have raised at sentencing and which were raised (Doc. No. 74-2 at ¶6.)

In his Affidavit attached to his reply, Mr. Moore never claims he expressly told Mr. Johnson he wanted to appeal. Instead, he claims Johnson must have him confused with another client because he was in the Preble County Jail on June 21, 2004, not the Montgomery County Jail. He also says that Johnson never consulted with him after sentencing about whether he wanted to appeal. This is consistent with Johnson's Affidavit which says he was not contacted by Moore after sentencing and does not claim that he contacted Moore during that time.

**Analysis**

Mr. Moore's claim that his statement that he understood his appeal rights constitutes an invocation of those rights is not legally tenable. Certainly, that is not the usual meaning of the words and there is nothing about the context in which they were spoken which would have alerted either Mr. Johnson or Judge Rice that that is what Mr. Moore meant when he said "I understand." Mr. Moore cites no case law interpreting those words in that context as an exercise of the right to appeal and the Court is aware of none. A notice of appeal must be in writing, as Judge Rice advised Mr. Moore when he indicated the appeal had to be "filed." (Transcript, Doc. No. 53 at 9). One can imagine the vast confusion at sentencing if "I understand" were taken to mean "I appeal." The following colloquy could well happen:

Judge: You have the right to appeal. Do you understand?

Defendant: I understand.

Judge: When you say "I understand," do you mean "I understand" or "I appeal."

Defendant: I understand.

Judge: But what do you mean by "I understand"? Do you just mean "I understand" or do you mean "I understand and I want to appeal" or do you mean just "I want to appeal"?

Defendant: I want to appeal.

Judge: But do you understand your appeal rights?

Defendant: I understand.

Judge: Do you really understand, or do you just want to appeal?

Given that Mr. Moore did not express an intention to appeal by saying "I understand" and does not claim that he otherwise explicitly told Mr. Johnson that he wanted to appeal, the question before the Court is that posed by *Roe v. Flores-Ortega,* 528 U.S. 470 (2000): would any rational defendant have wanted to appeal under the circumstances Mr. Moore faced such that Mr. Johnson's failure to consult about a possible appeal was ineffective assistance of counsel?

Mr. Moore has not suggested any non-frivolous issue on which he would have taken an appeal.

First of all, the record shows that the United States scrupulously kept its plea bargain with Mr. Moore – it did not charge him with the other Dayton bank robberies or the Memphis bank robberies in which he admitted being involved. The fact that the United States continued to insist that he keep his part of the bargain by admitting his involvement in those robberies and the impact of those other offenses on his Guideline range cannot have been a surprise – their inclusion in the calculation was explained by Judge Rice during the plea colloquy.

Secondly, Petitioner cannot credibly claim that what his attorney told him was the likely sentencing range is different from what he swore in open court he had been told. He was expressly

asked under oath, not once but three times, whether Mr. Johnson had told him anything different than what was put on the record during the plea colloquy and he answered no. (Transcript, Doc. No. 77 at 21, 30, and 40.)  Mr. Moore's situation is similar to that of a party in civil litigation who gives sworn deposition testimony and then attempts to contradict that testimony with an affidavit in opposition to a summary judgment motion.  The courts have long held that such a contradictory affidavit is to be given no weight.  *Gagne v. Northwestern Nat. Ins. Co.,* 881 F. 2d 309, 315 (6th Cir. 1989), quoting *Reid v. Sears, Roebuck & Co.,* 790 F. 2d 453, 460 (6th Cir. 1986);  *accord Biechele v. Cedar Point, Inc.*, 747 F. 2d 209, 215 (6th Cir. 1984)(quoting *Perma Research & Dev. Co. v. Singer Co.,* 410 F. 2d 572, 578 (2d Cir. 1969);  *Radobenko v. Automated Equipment Corp.,* 520 F. 2d 540 (9th Cir. 1975);  *Camfield Tires, Inc., v. Michelin Tire Corp.,* 719 F. 2d 1361 (8th Cir. 1983).

Third, Petitioner did not received any "enhancements" to his sentence within the meaning of the *Apprendi-Blakely-Booker* line of cases.

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 2355, 147 L.Ed.2d 435 (2000), held that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the **maximum** penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt" (emphasis added).  The maximum penalty for Count 1 in this case was 25 years and Petitioner received a sentence of ten years and one month.  The maximum sentence on Count 2 was life imprisonment and Petitioner received the mandatory minimum sentence of seven years.  *Blakely v. Washington*, 542 U.S. ___, 124 S.Ct. 2531, 159 L. Ed. 2d 403 (2004), and *United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738; 160 L. Ed. 2d 621 (2005), do not change this result.

To the extent Petitioner believes he is entitled to the benefit of the decision in *Booker* that the Sentencing Guidelines are not mandatory, he is mistaken.  *Booker* is not retroactive in its application.  *Humphress v. United States*, 398 F. 3d 855 (6th Cir. 2005).

In any event, to the extent Petitioner wanted to raise any objections to the PSI on appeal, he would be faced with his own and Mr. Johnson's on-the-record acceptance of the PSI and foreswearing of any objections.

There is no need for an evidentiary hearing on this Motion because there are no material disputed facts. In particular, whether Mr. Moore and Mr. Johnson conferred at the Preble or Montgomery County Jail on June 21, 2004, is not material to the content of their conversation, on which they do not materially disagree.

Because there is no non-frivolous issue which could be raised on appeal, this is not the sort of case that any rational defendant would want to appeal. It was, therefore, not ineffective assistance of counsel for Mr. Johnson to fail to discuss a possible appeal with Mr. Moore.

The Motion to Vacate should be denied on the merits. Because reasonable jurists would not disagree with this conclusion, Mr. Moore should be denied a certificate of appealability and leave to appeal *in forma pauperis*.

December 22, 2005.

> s/ **Michael R. Merz**
> Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v.*

*Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).